**Raymond SILVESTRE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–94–00404–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 9, 1995.

Discretionary Review Refused
April 26, 1995.

Kirk Oncken, Houston, for appellant.

John B. Holmes, Jr., Dan McCrory, Lance Long, Houston, for appellee.

Before COHEN, MIRABAL and TAFT, JJ.

## OPINION

COHEN, Justice.

A jury convicted appellant, Raymond Silvestre, of aggravated robbery, and the trial court assessed punishment at 35–years confinement. We affirm.

On the evening of October 9, 1993, the complainant, Ted Williams, was parked in his car when a masked assailant placed a knife at Williams' throat and ordered him not to move. Williams then felt the car moving back and forth, and a second assailant got in the passenger side of the car. The second assailant also wore a mask, but Williams noticed that he had tattoos on both shoulders and arms. Williams later identified appellant as the second assailant.

Appellant held the knife to Williams' neck while the first assailant got in the back seat on the driver's side, and appellant passed the knife back to him. Appellant ordered Williams to drive, and the first assailant continued holding the knife to Williams' neck.

After driving for approximately 15 minutes, Williams attempted to flee, but appellant grabbed him. During the struggle, Williams removed appellant's ski mask. Williams recognized appellant and told him, "I know you. My dad used to work with your dad as mechanic...." Williams and appellant had also attended the same school. As Williams attempted to flee, he fought with the first assailant, while appellant urged his accomplice to kill Williams. After suffering

several cuts to the hand and forearm, Williams managed to escape. He saw the two men driving away in his car.

Williams called the police, reported the assault, and identified appellant as one of the assailants. Several weeks later, Williams spotted his car parked on the street, and called the police. When the police approached Williams' vehicle, they saw appellant parked nearby. Appellant's companion ran in a nearby house when approached by the police, but appellant, a paraplegic, remained outside and spoke to the police officers.

The police called a wrecker, and the car was released to Williams. It was missing its battery and radio. Sometime later, appellant was arrested and charged with aggravated robbery.

■ In point of error one, appellant contends the trial court erred by requiring appellant to display the tattoos on his arms to the jury. One of his tattoos was a "TS," apparently the insignia for the Texas Syndicate, a prison gang. Appellant argued that any probative value gained from showing his tattoos to the jury was outweighed by the prejudice he would suffer if one of the jurors recognized the "TS" insignia. The trial court ruled that he would allow the demonstration because appellant's identity was an issue in the case, but he prohibited the prosecutor from informing the jury that the "TS" referred to a certain organization. At the close of the State's case, appellant was required to remove his jacket and roll up his sleeves so that the jury could see his tattoos. No comment was made about the tattoos.

Appellant contends that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, because the jurors might recognize the Texas Syndicate insignia.

Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Tex.R.Crim.Evid. 403 (emphasis added).

■ Rule 403 does not authorize exclusion of evidence because it creates prejudice; it authorizes exclusion of evidence only if it creates unfair prejudice that substantially outweighs its probative value. *Gonzales v. State*, 838 S.W.2d 848, 862 (Tex.App.—Houston [1st Dist.] 1992, pet. dism'd). Rule 403 favors the admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex.Crim.App.1990) (op. on reh'g). In close cases, the trial court should favor the admission of evidence, in keeping with the presumption of the admissibility of relevant evidence. *Id.*

We do not conduct a de novo review of the record to determine whether the probative value is substantially outweighed by the danger of unfair prejudice. *Montgomery*, 810 S.W.2d at 392. We will reverse the judgment of the trial court "rarely and only after a clear abuse of discretion." *Id.*

To determine whether the trial court abused its discretion we consider the following factors:

(1) Whether the ultimate issue to which the evidence was relevant was seriously contested;

(2) Whether the State had other convincing evidence to establish the ultimate issue to which the evidence was relevant; and

(3) Whether the probative value of the evidence was compelling.

*Montgomery*, 810 S.W.2d at 392–93; *Gonzales*, 838 S.W.2d at 863.

The trial court concluded the tattoos were relevant to show identity. However, appellant argues his identity was not seriously contested because Williams testified he removed the mask and recognized appellant.

Appellant seriously contested his identity. He moved for an instructed verdict claiming that the evidence of identity was insufficient. He presented alibi evidence that he was elsewhere during the robbery. When the trial judge asked appellant's counsel whether

identity was an issue, counsel stated there was a "substantial question" about identity. Thus, the first factor in *Montgomery* favors admitting the evidence.

We next consider whether the State had other convincing evidence to establish appellant's identity. Williams testified that at first he could not see his assailant's face, but he later pulled the mask off and recognized appellant. Therefore, the State had some convincing evidence other than the tattoos to prove identity. Williams also testified that he thought he saw a wheel in the back seat of his vehicle during the robbery; appellant is a paraplegic and is confined to a wheelchair. This evidence may have been convincing, but was far from overwhelming, given the unlikelihood of a wheelchair-bound paraplegic committing a hijacking with a knife. Nevertheless, we conclude that this factor of *Montgomery* weighs against admission of the evidence.

Finally, we must consider whether the probative value of the evidence is compelling. Williams testified that the man who attacked him had tattoos on both arms. Appellant had tattoos on both arms. We find this to be compelling evidence of identity. The third factor of *Montgomery* favors admitting the evidence.

Moreover, the tattoos were far less prejudicial than the evidence in *Montgomery*, which consisted of extraneous offenses. Tattoos are not inherently prejudicial. Furthermore, nothing shows that a juror would recognize "TS" as the insignia of the Texas Syndicate, or knew what the Texas Syndicate was. Bearing in mind that the trial court should favor the admission of relevant evidence in close cases, and in keeping with the presumption of the admissibility of relevant evidence, we hold that the trial court did not abuse its discretion.

We overrule point of error one.

In point of error two, appellant contends the trial court erred by failing to grant a challenge for cause of prospective juror number 48, Reid McMillion, because of his inability to consider the minimum punishment provided by law.

Even if Mr. McMillion could not consider the minimum punishment, there was no reversible error. Appellant does not contend that Mr. McMillion could not fairly decide whether appellant was guilty. Because the judge, not the jury, assessed punishment in this case, appellant would not have been harmed by having Mr. McMillion on the jury at the guilt-innocence stage of trial.

We overrule point of error two.

We affirm the judgment.

TAFT, J., not participating.