# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00237-CR

**Richard Alan Ashcraft, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT
### NO. A-06-1247-S, HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury found appellant Richard Alan Ashcraft guilty of aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2) (West Supp. 2007). The district court assessed punishment, enhanced by a previous felony conviction, at twenty-five years' imprisonment. In a single point of error, appellant contends that the evidence does not support the jury's finding that a deadly weapon was used in the assault. We overrule this contention and affirm the conviction.

Around midnight on July 2, 2006, appellant and Daniel Sandoval drove from Ballinger to San Angelo to visit Alfred Parks. What happened after they arrived was a matter of some dispute. Parks testified that he was awakened by Sandoval's knock on his door. Parks said that he first told Sandoval and appellant that he did not want company, but he relented and admitted them. According to Parks, both Sandoval and appellant were intoxicated. After thirty or forty-five minutes, Sandoval and appellant got up to leave, and Parks accompanied them outside. Parks

testified that as they stood on the porch, appellant began "hitting me in the back." Parks said that he ran toward the alley, where appellant caught up with him and "hit me again." Parks testified that he did not realize initially that appellant had in fact stabbed him. According to Parks, "I didn't feel it until I reached around behind my back and went like that and I seen the blood on my hand." During cross-examination, Parks added, "I didn't feel no puncture or nothing. I've been stabbed before so I know how it feels. . . . I didn't even feel this." Parks said that he never saw the weapon, and he acknowledged that he told conflicting stories to the police following the incident.

In his own testimony, appellant said that Parks became angry when he saw appellant with Sandoval. Appellant asked Parks why he was angry, but Parks did not reply. Instead, Parks reentered the house, leaving appellant and Sandoval on the porch, and then returned holding a small pocket knife with a two-inch blade. According to appellant, Parks "came at me" with the knife. Appellant fled to the alley, where he and Parks began to wrestle and fell to the ground. In the scuffle, Parks dropped the knife. Appellant said that he picked up the knife and stabbed Parks "to get him off of me." Appellant testified that after stabbing Parks, he dropped the knife in the alley and fled. Appellant said that he regretted stabbing Parks, and that he had done so only to defend himself.

The police officer who first responded to the emergency call found Parks lying on a bed, with blood "all over the bed and his back." Parks was transported to the hospital, where he was found to have four stab wounds to his back. Medical records and photographs in evidence reflect that two of the stab wounds were just to the right of Parks's spine, below the shoulder blade. One of these wounds was 2 centimeters across and 2.5 centimeters deep, while the other was 1 centimeter

2

across and 2.5 centimeters deep. The other two wounds were on the left side of Parks's back, also below the shoulder blade. One of these wounds was 1 centimeter across and 5 centimeters deep, and the other was 1 centimeter across and 3 centimeters deep.

There is no evidence that Parks lost a life-threatening amount of blood, but a photograph of the pants he was wearing shows that there were large blood stains. A pattern of blood drops was found running from Parks's porch and along the ground toward the alley. The knife was never recovered, but it is undisputed that it was the weapon used by appellant to stab Parks.

The jury rejected appellant's self-defense claim and convicted him of aggravated assault. Appellant challenges the sufficiency of the evidence only with respect to the jury's finding that the knife was a deadly weapon. Appellant does not indicate whether he is raising a legal or a factual sufficiency challenge. In the interest of justice, we will review the evidence under both standards. Under the legal sufficiency standard, the question presented is whether, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found that the knife was a deadly weapon. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981). Under the factual sufficiency standard, the evidence is viewed neutrally, and the evidence will be deemed insufficient if the evidence supporting the jury's finding is so weak as to make the finding clearly wrong or manifestly unjust, or if the finding is against the great weight and preponderance of the available evidence. *See Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

An ordinary knife is not a deadly weapon per se; that is, it is not an object manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. Tex. Penal Code Ann. § 1.07(a)(17)(A) (West Supp. 2007); *McCain v. State*, 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000). Instead, a knife becomes a deadly weapon if, in the manner of its use or intended use, it is capable of causing death or serious bodily injury. Tex. Penal Code Ann. § 1.07(a)(17)(B); *McCain*, 22 S.W.3d at 503. This capability must be evaluated in light of the facts that existed when the offense was committed. *Brown v. State*, 716 S.W.2d 939, 946-47 (Tex. Crim. App. 1986).

Appellant argues that the knife at issue was not shown to be a deadly weapon because: (1) the blade was only two inches long and there is no evidence that a blade of this length is capable of inflicting serious bodily injuries or death; (2) the wounds inflicted were not serious and did not require stitches; and (3) there is no evidence that appellant threatened Parks or intended to seriously hurt him. He relies primarily on the opinion in *Tucker v. State*, 221 S.W.3d 780 (Tex. App.—Corpus Christi 2007, pet. granted). In that case, the defendant stabbed the complainant twice with a two-inch folding knife, once in the neck near the spine and once on her arm. *Id*. at 782. The court held that the evidence did not support the finding that the knife was a deadly weapon because the wounds inflicted were not serious, there was no evidence of threats by the defendant, there was no testimony that the knife (which was not in evidence) was capable of causing serious bodily injury or death, and "there was no evidence whatsoever regarding the manner" of the knife's use by the defendant. *Id*. at 784.

4

We are not persuaded by the *Tucker* court's analysis. For one thing, the court was simply wrong when it stated that there was no evidence regarding the manner of the knife's use by the defendant. To the contrary, the evidence showed that the defendant used the knife to stab the complainant twice, once in the neck near the spine. *Id*. at 782. It is not necessary to introduce a knife into evidence in order to prove that it was a deadly weapon. *Victor v. State*, 874 S.W.2d 748, 751 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Expert testimony is also not required. *Davidson v. State*, 602 S.W.2d 272, 273 (Tex. Crim. App. 1980). Moreover, it is not necessary for the State to prove that the wounds inflicted were serious; in fact, no wounds need be inflicted at all. *Id*. Finally, it is not necessary that the actor actually intend to cause death or serious bodily injury; it is sufficient that the actor intended a use of the knife in which it would be capable of causing death or serious bodily injury. *McCain*, 22 S.W.3d at 503.

In *McCain*, the defendant burst into the complainant's house, struck her several times with his fist, and stole her car and pager. *Id*. at 499. The complainant testified that during the attack, she saw an object that appeared to be a knife sticking out of the defendant's back pocket, and the defendant had a butcher knife in his pocket when he was arrested. *Id*. The defendant did not verbally threaten the complainant, brandish the knife, or even refer to the knife during the assault. *Id*. The court of criminal appeals held that "the mere carrying of a butcher knife during such a violent attack . . . was legally sufficient for a factfinder to conclude that the 'intended use' of the knife was that it be capable of causing death or bodily injury." *Id*. at 503. Hence, the knife was proved to be a deadly weapon under the circumstances. *Id*.

A pocket knife with a two-inch blade is not a particularly fearsome weapon. Nevertheless, the evidence before us shows that appellant used the knife to stab Parks four times in the back. Although the wounds were not shown to be serious, they did require hospital treatment. Moreover, two of the stab wounds were very close to Parks's spine, and the jury could have reasonably inferred that, but for luck, the injuries inflicted by appellant might have been much worse. Even without the assistance of expert testimony, the jury could reasonably conclude that a knife long enough and sharp enough to penetrate a body as deeply as 5 centimeters, when used to repeatedly stab a person in the back during a close physical struggle, is capable of causing serious bodily injury. We hold that the evidence in this case, viewed in the light most favorable to the verdict, was legally sufficient to support a finding that appellant intended to use and did use the knife as a deadly weapon.

We also find the evidence to be factually sufficient. Appellant points out that Parks and Sandoval (who also testified for the State) gave conflicting stories to the police on the night of the offense, and told yet another story at trial. But appellant also had a credibility problem; he admitted having nine felony convictions since 1983. And in any event, the conflicting testimony had to do with why appellant and Sandoval had gone to Parks's house and who initiated the fight. The State did not seek to refute appellant's description of the weapon as a pocketknife with a two-inch blade, and appellant admitted in his own testimony that he repeatedly stabbed Parks in the back with the knife as the two men struggled in the alley. Viewing all the evidence in a neutral light, we hold that the jury's finding that the knife was a deadly weapon in the manner of its use and intended use by appellant was not manifestly unjust or against the great weight of the evidence.

6

The point of error is overruled and the judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   February 21, 2008

Do Not Publish